**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI**

**CASE NO.: 1:25-cv-21145**

ZURU INC.,

Plaintiff,

v.

NEWWANDE and XpenGeny,

Defendants.

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, ZURU INC., by and through its undersigned counsel, brings this complaint against Defendants, NEWWANDE and XpenGeny (collectively "Defendants"), who are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district through various Internet based e-commerce stores using the seller identities as set forth on Schedule "A" hereto (the "Seller IDs"), and in support of its claims, alleges as follows:

## SUMMARY OF THE ACTION

1. Plaintiff, ZURU INC. ("ZURU") brings this action for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida common law.

2. Plaintiff, ZURU INC. ("ZURU") brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial

gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, et seq. 17 U.S.C. § 504.

## SUBJECT MATTER JURISDICTION

3. This court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

4. This court also has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 17 U.S.C. § 301.

5. This court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

## PERSONAL JURISDICTION

6. Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Florida and this district, through at least the internet-based e-commerce stores accessible in Florida and operating under their Seller IDs.

7. Defendants are subject to personal jurisdiction in this district because their illegal activities directed towards the state of Florida cause Plaintiff injury in Florida, and Plaintiff's claims arise out of those activities.

8. Alternatively, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

## VENUE

9. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not residents in the United States and therefore there is no district in which an action may otherwise be brought. Defendants are thus subject to the Court's personal jurisdiction.

10. Venue is proper in this court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, aliens who are engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products to consumers into this district.

## THE PLAINTIFF

11. Plaintiff ZURU INC. is a corporation incorporated under the law of the British Virgin Islands and a Hong Kong registered company with offices in Kowloon, Hong Kong.

12. Plaintiff ZURU INC. is the U.S. exclusive licensee of all rights in and to the trademarks and copyright described below that are the subject of this action from its parent company ZURU (Singapore) PTE, Ltd.

13. ZURU is a disruptive and award-winning company that designs, manufactures and markets innovative toys and consumer products. Inspired by kids and imaginative play, ZURU is one of the fastest growing toy companies in the world and is known for their agility, creativity, and new-age manufacturing techniques. ZURU distributes to all major retailers in over 120 countries and has delighted millions of families all over the world with its extensive brand portfolio and partnerships with entertainment properties, including Nickelodeon, Disney, Universal Studios and Dream Works.

14. ZURU's products are sold through Amazon.com, Walmart.com, Target.com, Costco.com, Lowes.com, its own website https://zuru.com/, and other authorized retailers.

15. Plaintiff offers for sale and sells its products within the state of Florida, including this district, and throughout the United States.

16. Like many other intellectual property rights owners and exclusive licensees, Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of counterfeiters and infringers, such as Defendants herein.

17. Plaintiff is harmed, the consuming public is duped and confused, and the Defendants earn substantial profits in connection with the infringing conduct.

18. In order to combat the harm caused by the combined actions of Defendants and others engaging in similar infringing conduct, Plaintiff expends significant resources in connection with its intellectual property enforcement efforts, including legal fees and investigative fees.

19. The recent explosion of infringement over the Internet has created an environment that requires companies like Plaintiff to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and itself from the ill effects of infringement of Plaintiff's licensed intellectual property rights, including consumer confusion and the erosion of Plaintiff's brand.

## PLAINTIFF'S TRADEMARK RIGHTS

20. ZURU has earned an international reputation for quality, reliability and value, and is credited for many breakthroughs that have occurred in the toy industry.

21. ZURU is an exclusive licensee and official source of ROBO FISH and ROBO ALIVE branded products in the United States.

22. ROBO FISH are real-life robotic toy pets. ROBO FISH are sold under several federally registered trademarks including ROBO FISH and ROBO ALIVE (collectively, the "ROBO Marks").

23. ZURU became the exclusive licensee in the U.S. of all rights in and to the ROBO Marks (Standard Characters) from its parent company ZURU (Singapore) PTE, Ltd. via written agreement on January 1, 2021. The ROBO Marks are shown in the table below. True and correct copies of the registration certificates are attached hereto as Composite Exhibit 1.

| **Mark** | **U.S. Reg. No.** | **IC** | **First Use/ First Use in Commerce** | **Registration Date** | **Exhibit** |
|---|---|---|---|---|---|
| ROBO FISH | 4440702 | 28 | Aug. 1, 2011/ Jan. 10, 2012 | Nov. 26, 2013 | 1A |
| ROBO ALIVE | 5294215 | 28 | Jun. 1, 2016/ Jul. 4, 2016 | Sept. 26, 2017 | 1B |

24. The ROBO FISH Mark is valid and registered in International Class 28 for "toys, games and playthings, namely, electronic action toys, battery operated action toys, R/C creatures, R/C aquatic toys, R/C vehicles and craft, toy R/C figures" on the Principal Register of the United States Patent and Trademark Office as shown in Composite Exhibit 1. The ROBO ALIVE Mark is valid and registered in International Class 28 for "toys, games and playthings, namely, electronic action toys; electronic action water toys; battery operated action toys; battery operated action water toys; remote controlled toys, namely, remote controlled electronic action toys, remote controlled electronic aquatic toys; radio-controlled toys, namely, radio controlled electronic action toys, radio controlled electronic aquatic toys; electronic toys, namely, electronic action toys; toy creatures, namely, toy animals; electronic toy animals and creatures, namely, toy animals" on the Principal Register of the United States Patent and Trademark Office as shown in Composite Exhibit 1.

25. The ROBO Marks are incontestable.

26. The ROBO Marks are used in connection with the manufacture and distribution of Plaintiff's high-quality and unique aquatic toy pets.

27. The ROBO Marks are displayed on different sides of the colorful and original packaging used for selling the products. Shown below are the ROBO Marks as they are used on the packaging for Plaintiff's products.










28. The ROBO Marks have been continuously used in interstate commerce to identify and distinguish Plaintiff's high-quality and unique aquatic toys for an extended period of time.

29. The ROBO Marks have been used by Plaintiff for a long time prior to Defendants' use of copies of those trademarks.

30. ZURU is the licensee of all rights in and to the ROBO Marks, including the exclusive right to pursue acts of infringement and retain and recover all proceeds thereof.

31. The ROBO Marks have never been assigned or licensed to Defendants.

32. The ROBO Marks are a symbol of Plaintiff's quality goods, reputation and goodwill and have never been abandoned.

33. Plaintiff has carefully monitored and policed the use of the ROBO Marks.

34. The ROBO Marks are well known and famous (as that term is used in 15 U.S.C. §1125(c)(1)) and have been for many years.

35. Plaintiff has expended substantial time, money and other resources developing, advertising and otherwise promoting the ROBO Marks and the aquatic toys bearing or using those Marks.

36. Plaintiff has extensively used, advertised, and promoted the ROBO Marks in the United States in association with the sale of high-quality and unique aquatic toys.

37. Plaintiff has spent substantial resources promoting the ROBO Marks and aquatic toys bearing or using the ROBO Marks.

38. In recent years, sales of products bearing or using the ROBO Marks have exceeded a million dollars within the United States.

39. As a result of Plaintiff's efforts, members of the consuming public readily identify merchandise bearing or sold under the ROBO Marks as being high-quality and unique aquatic toys sponsored and approved by Plaintiff.

40. Accordingly, the ROBO Marks have achieved secondary meaning as identifiers of high-quality and unique aquatic toys.

41. Genuine aquatic toy pets bearing or sold under the ROBO Marks are widely and legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet.

42. Visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing has become increasingly important to Plaintiff's overall marketing and consumer education efforts.

43. Thus, Plaintiff expends significant monetary resources on Internet marketing and consumer education, including search engine optimization ("SEO") strategies.

44. Plaintiff's SEO strategies allow Plaintiff and its authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's products and the goods marked with the ROBO Marks.

**PLAINTIFF'S COPYRIGHT RIGHTS**

45. Plaintiff ZURU Inc. owns all exclusive rights in various copyrights for the ROBO Fish Products as the exclusive licensee of ZURU (Singapore) PTE., Ltd.

46. ZURU (Singapore) PTE, Ltd. registered with the U.S. Copyright Office a series of sculptures used with the ROBO Marks products in the United States, listed in the table below (hereinafter referred to as the "Copyrighted Works"). True and correct copies of the certificates of registration are attached hereto as part of Composite Exhibit 2.

| **Copyright Title and Description** | **Reg. No.** | **Reg. Date** | **Exhibit** |
|---|---|---|---|
| ROBOFISH PURPLE (sculpture) | VA 2-249-214 | 4/28/2021 | 2A |

| | | | |
|---|---|---|---|
| ROBOFISH RED (sculpture) | VA 2-253-396 | 5/26/2021 | 2B |
| ROBOFISH BLUE (sculpture) | VA 2-253-394 | 5/26/2021 | 2C |
| ROBOFISH AQUA (sculpture) | VA 2-253-392 | 5/26/2021 | 2D |
| ROBOFISH BROWN (sculpture) | VA 2-253-391 | 5/26/2021 | 2E |
| ROBOFISH ORANGE (3d sculpture) | VA 2-248-953 | 4/20/2021 | 2F |

47. Exemplary images of the sculptures can be seen below.





48. On January 1, 2021, by written agreement, Plaintiff ZURU INC. became the exclusive licensee in the U.S. of all rights in and to the Copyrighted Works.

49. At all relevant times Plaintiff is the exclusive licensee of all rights in and to the Copyrighted Works, including the exclusive right to pursue acts of infringement and retain and recover all proceeds thereof, at issue in this case.

50. The Copyrighted Works are protected by copyright but are not otherwise confidential, proprietary, or trade secret.

**DEFENDANTS**

51. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

52. Defendants are individuals and/or business entities of unknown makeup, who, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to shipping and fulfillment centers within the United States to redistribute their products from those locations.

53. Defendants are engaged in business in Florida but have not appointed an agent for service of process.

54. Defendants have registered, established or purchased, and maintained Internet-based- e-commerce stores and Seller IDs.

55. Defendants target their business activities toward consumers throughout the United States, including within this district, through their simultaneous operations of commercial Internet based e-commerce stores via the Internet marketplace websites under the Seller IDs.

56. Defendants are the past and present controlling forces behind the sale of products bearing or using counterfeits and infringements of Plaintiff's licensed intellectual property rights as described herein operating and using at least the Seller IDs.

57. Defendants directly engage in unfair competition with Plaintiff by advertising, offering for sale, and selling goods bearing or using counterfeits and infringements of Plaintiff's licensed intellectual property rights to consumers within the United States and this district through Internet based e-commerce stores using, at least, the Seller IDs and additional names, websites, or seller identification aliases not yet known to Plaintiff.

58. Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing goods into the State.

59. Upon information and belief, Defendants may have engaged in fraudulent conduct with respect to the registration of the Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell during the registration or maintenance process related to their respective Seller IDs.

60. Upon information and belief, many Defendants registered and maintained their e-commerce stores and Seller IDs for the sole purpose of engaging in illegal counterfeiting and infringing activities.

61. Upon information and belief, Defendants will likely continue to register or acquire new e-commerce websites or seller identification aliases for the purpose of selling and offering for sale counterfeits and infringements of Plaintiff's licensed intellectual property rights unless preliminarily and permanently enjoined.

62. Defendants use their Internet-based businesses to infringe the intellectual property rights of Plaintiff and others.

63. Defendants' business names, i.e., the websites or the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in

connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

64. The Defendants use individual seller store names, product denominations and descriptive content containing one or more of the ROBO Marks, and these store names are indexed on search engines and compete directly with Plaintiff for space in search results.

65. The appearance of Defendants' Internet based e-commerce stores in search engine results undermines Plaintiff's efforts to educate consumers about the value of products sold under the ROBO Marks.

66. Defendants are using counterfeits and infringements of Plaintiff's licensed intellectual property rights to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby increasing the value of their e-commerce stores or the Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

67. Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

68. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

69. At all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER**

70. Defendants are promoting, selling, offering for sale and distributing goods bearing counterfeits and confusingly similar imitations of Plaintiff's intellectual property within this district.

71. Joinder of Defendants is permissible based on the permissive party joinder rule of Fed. R. Civ. P. 20(a)(2) that permits the joinder of persons in an action as Defendants where any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all Defendants will arise in the action.

72. Joinder of the NEWWANDE and XpenGeny is permitted because Plaintiff asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

73. Joinder of Defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Plaintiff, Defendants, and this Court.

74. Joinder of Defendants will not create any unnecessary delay, nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Plaintiff and Defendants alike.

75. Joinder of Defendants is procedural only and does not affect the substantive rights of either defendant.

76. This Court has jurisdiction over the Defendants. Venue is proper in this court for this dispute involving Defendants.

77. Plaintiff's claims against Defendants are all transactionally related.

78. Plaintiff is claiming counterfeiting, infringement, and piracy against Defendants of Plaintiff's intellectual property rights.

79. The actions of Defendants cause indivisible harm to Plaintiff by Defendants' combined actions engaging in similar counterfeiting and infringing conduct when each is compared to the others.

80. Defendants' actions are logically related. Defendants are both engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

81. Upon information and belief, Defendants are located in foreign jurisdictions, likely China.

82. Both Defendants undertake efforts to conceal their true identities from Plaintiff in order to avoid detection for their illegal counterfeiting and infringing activities.

83. Both Defendants have the same or closely related sources for their counterfeit and infringing products with some sourcing from the same upstream source and others sourcing from downstream sources who obtain counterfeit products from the same upstream sources.

84. Both Defendants take advantage of a set of circumstances the anonymity and mass reach the internet affords to sell counterfeit and infringing goods across international borders and violate Plaintiff's intellectual property rights with impunity.

85. Both Defendants have established their e-commerce stores or registered their Seller IDs with Amazon.com for the purpose of engaging in counterfeiting and infringements.

86. Both Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

87. Both Defendants use their payment and financial accounts to accept, receive, and deposit profits from their counterfeiting and infringing activities.

88. Both Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's anti-counterfeiting and anti-piracy efforts are discovered or Plaintiff obtains a monetary award.

89. Both Defendants violated one or more of the Plaintiff's intellectual property rights in the United States by the use of common or identical methods.

90. Both Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

91. Defendants' business names, i.e., the websites, the Seller IDs, associated payment accounts, and any other alias seller identification names or e-commerce stores used in connection with the sale of counterfeits and infringements of Plaintiff's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement scheme and cause harm to Plaintiff.

92. Defendants are using counterfeits and infringements of Plaintiff's intellectual property rights to drive Internet consumer traffic to their e-commerce websites and stores operating under the Seller IDs, thereby increasing the value of their e-commerce stores or the

Seller IDs and decreasing the size and value of Plaintiff's legitimate marketplace and intellectual property rights at Plaintiff's expense.

93. Defendants, through the sale and offer to sell counterfeit and infringing products, are directly, and unfairly, competing with Plaintiff's economic interests in the state of Florida and causing Plaintiff harm and damage within this jurisdiction.

94. The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property rights and the destruction of the legitimate market sector in which it operates.

95. At all times relevant hereto, Defendants had actual or constructive knowledge of Plaintiff's intellectual property rights, including Plaintiff's exclusive right to use and license such intellectual property rights.

**DEFENDANTS' INFRINGING ACTIVITIES**

96. Defendants are promoting, advertising, distributing, selling, and/or offering for sale cheap copies of Plaintiff's products in interstate commerce that are counterfeits and infringements of Plaintiff's intellectual property rights (the "Counterfeit Goods") through at least the Internet based e-commerce websites and stores operating under the Seller IDs.

97. Specifically, Defendants are using one or more of the ROBO Marks and Plaintiff's Copyrighted Works to initially attract online customers and drive them to Defendants' e-commerce websites and stores operating under the Seller IDs.

98. Defendants are using identical or similar marks to one or more of the ROBO Marks, or identical or substantially similar copies of the Copyrighted Works for different quality goods.

99. Plaintiff has used the ROBO Marks extensively and continuously before Defendants began offering counterfeit and confusingly similar imitations of Plaintiff's merchandise.

100. Plaintiff registered the Copyrighted Works before Defendants began using the same or substantially similar copies, in connection with the promotion and sale of their Counterfeit Goods.

101. Defendants' Counterfeit Goods are of a quality substantially different than that of Plaintiff's genuine goods.

102. Defendants are actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiff, despite Defendants' knowledge that they are without authority to use the ROBO Marks.

103. The net effect of Defendants' actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods offered for sale on Defendants' e-commerce stores are genuine goods originating from, associated with, and approved by Plaintiff.

104. Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, one Internet marketplace website operating under, at least, the Seller IDs.

105. In so advertising their stores and products, Defendants improperly and unlawfully use one or more of the ROBO Marks or Copyrighted Works without Plaintiff's permission.

106. As part of their overall infringement and counterfeiting scheme, most Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of counterfeits and infringements of one or more of the ROBO Marks.

107. Specifically, Defendants are using counterfeits and infringements of one or more of the ROBO Marks or Copyrighted Works in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers searching for both Plaintiff's goods and goods sold by Plaintiff's competitors online.

108. By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.

109. Defendants are causing individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the ROBO Marks, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers via the Internet.

110. Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.

111. As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit.

112. At all times relevant hereto, Defendants in this action had actual or constructive knowledge of Plaintiff's licensed trademarks and copyrights, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

113. Defendants' use of one or more of the ROBO Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of their Counterfeit Goods, is without Plaintiff's consent or authorization.

114. Defendants are engaging in the above-described illegal counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's licensed trademarks and copyrights for the purpose of trading on Plaintiff's goodwill and reputation.

115. If Defendants' intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

116. Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

117. Defendants' wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Counterfeit Goods, which there is not.

118. Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' counterfeiting and infringing, and their unfairly competitive activities connected to their Seller IDs and any other alias, e-commerce stores, or seller identification names being used and/or controlled by them.

119. Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

120. Plaintiff is suffering irreparable injury and has suffered substantial damages as a result of Defendants' unauthorized and infringing activities and its wrongful use of Plaintiff's licensed trademarks and copyrights.

121. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

122. The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

123. Defendants have sold their infringing products in competition directly with Plaintiff's genuine products.

124. Plaintiff should not have any competition from Defendants because Plaintiff never authorized Defendants to use Plaintiff's licensed trademarks or copyrights.

125. Plaintiff has no adequate remedy at law.

**COUNT I – TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

126. Plaintiff incorporates the allegations of paragraphs 1 through 125 of this Complaint as if fully set forth herein.

127. This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of one or more of the ROBO Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

128. Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of one or more of the ROBO Marks.

129. Defendants are continuously infringing and inducing others to infringe the ROBO Marks by using it to advertise, promote, sell, and offer to sell counterfeit and infringing goods.

130. Defendants' concurrent counterfeiting and infringing activities are likely to cause and actually are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

131. Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

132. Defendants' above-described illegal actions constitute counterfeiting and infringement of the ROBO Marks in violation of Defendants rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

133. Plaintiff has suffered and will continue to suffer irreparable injury and damages due to Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined.

134. If not preliminarily and permanently enjoined, Defendants will continue to wrongfully profit from their illegal activities.

**COUNT II – FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(A))**

135. Plaintiff incorporates the allegations of paragraphs 1 through 125 of this Complaint as if fully set forth herein.

136. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of the ROBO Marks have been widely advertised and offered for sale throughout the United States via at least one Internet marketplace website.

137. Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of at least one of the ROBO Marks are virtually identical in appearance to Plaintiff's genuine goods.

138. Defendants' Counterfeit Goods are different in quality from Plaintiff's goods and are of much lower quality.

139. Defendants' activities are likely to cause confusion in the trade and among the general public as to at least the origin or sponsorship of their Counterfeit Goods.

140. Defendants, upon information and belief, have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and trade dress, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiff's detriment.

141. Defendants have authorized infringing uses of the ROBO Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods.

142. Defendants have misrepresented to members of the consuming public that the Counterfeit Goods being advertised and sold by them are genuine, non-infringing goods.

143. Defendants are using counterfeits and infringements of one or more of the ROBO Marks in order to unfairly compete with Plaintiff and others for space within organic search engine results and social media results, thereby jointly depriving Plaintiff of a valuable

marketing and educational tool which would otherwise be available to Plaintiff and reducing the visibility of Plaintiff's genuine goods on the internet and across social media platforms.

144. Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

145. Plaintiff has no adequate remedy at law and has sustained indivisible injury and damage caused by Defendants' concurrent conduct.

146. Absent an entry of an injunction by this Court, Defendants will continue to wrongfully reap profits and Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT III – COMMON LAW TRADEMARK INFRINGEMENT**

147. Plaintiff incorporates the allegations of paragraphs 1 through 125 of this Complaint as if fully set forth herein.

148. Plaintiff is the exclusive licensee of all common law rights in and to the ROBO Marks.

149. Plaintiff was the first to use the ROBO Marks.

150. Plaintiff has used the ROBO FISH Mark since August 1, 2011, and the ROBO ALIVE Mark since June 1, 2016.

151. As a result of Plaintiff's widespread and continuous use in commerce, including its promotion and sales of products bearing Plaintiff's ROBO Marks, the ROBO Marks have become widely known

152. Defendants are promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing infringements of the ROBO Marks.

153. Defendants' infringing activities are likely to cause and, are actually causing, confusion, mistake and deception among members of the trade and the general consuming public

as to the origin and quality of Defendants' Counterfeit Goods bearing or using one or more of the ROBO Marks.

154. Plaintiff has no adequate remedy at law and is suffering damages and irreparable injury as a result of Defendants' actions.

155. Absent an entry of an injunction by this Court, Defendants will continue to damage Plaintiff and wrongfully reap profits. Plaintiff will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages.

**COUNT IV – COMMON LAW UNFAIR COMPETITION**

156. Plaintiff incorporates the allegations of paragraphs 1 through 125 of this Complaint as if fully set forth herein.

157. Defendants' activities complained of herein constitute unfair methods of competition.

158. Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale and distributing goods using or bearing counterfeits and infringements of one or more of the ROBO Marks.

159. Defendants are also using counterfeits and infringements of one or more of the ROBO Marks to unfairly compete with Plaintiff and others for (1) space in search engine and social media results across an array of search terms and (2) visibility on the Internet.

160. Defendants' infringing activities are likely to cause and actually are causing confusion, mistake and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' individual seller stores at Amazon.com and all products sold therein by their use of the ROBO Marks.

161. Plaintiff has no adequate remedy at law and is suffering irreparable injury and damages as a result of Defendants' actions.

## COUNT V – COPYRIGHT INFRINGEMENT

162. Plaintiff incorporates the allegations of paragraphs 1 through 125 of this Complaint as if fully set forth herein.

163. Plaintiff is the exclusive licensee of the Copyrighted Works at issue in this case.

164. Defendants copied, displayed, and distributed products with the Copyrighted Works at issue in this case and made derivatives of the Copyrighted Works without Plaintiff's authorization in violation of 17 U.S.C. § 501.

165. Defendants performed the acts alleged in the course and scope of its business activities.

166. On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

167. Defendants' acts were willful.

168. Plaintiff has been damaged.

169. The harm caused is irreparable.

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116 and Federal Rule of Civil Procedure 65 enjoining Defendants, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from

infringing, counterfeiting, or diluting the ROBO Marks; from using the ROBO Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from falsely representing themselves as being connected with Plaintiff , through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants, are in any way endorsed by, approved by, and/or associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the ROBO Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Plaintiff, or in any way endorsed by Plaintiff and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiff's name or trademarks and from otherwise unfairly competing with Plaintiff.

b. Entry of a Temporary Restraining Order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non- genuine goods bearing and/or using counterfeits of the ROBO Marks and the Copyrighted Works.

c. Entry of an order authorizing seizure, impoundment and/or destruction of all of the products used to perpetrate the infringing acts pursuant to 17 U.S.C. § 503.

d. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the ROBO Marks or the Copyrighted Works.

e. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet marketplace website operators,

administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

f. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace and e-commerce stores operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing counterfeits and/or infringements of the ROBO Marks or Copyrighted Works via the e-commerce stores operating under the Seller IDs, and upon Plaintiff's request, any other listings and images of goods bearing or using counterfeits and/or infringements of the ROBO Marks or Copyrighted Works associated with any product number linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of the ROBO Marks or Copyrighted Works.

g. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace and e-commerce website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendants bearing the ROBO Marks or Copyrighted Works in its inventory, possession, custody, or control, turn over documents reflecting the total number of infringing goods manufactured, distributed, sold and still remaining in inventory including but not limited to production reports, shipping invoices, bills of lading, sales invoices, and inventory-on-hand reports, and surrender those goods to Plaintiff.

h. Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their products, including without limitation, the placement of corrective advertising and providing written notice to the public.

i. Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Plaintiff be trebled, as provided for under 15 U.S.C.§ 1117, or, at Plaintiff's election with respect to Count I, that Plaintiff be awarded statutory damages from each Defendants in the amount of

two million dollars ($2,000,000.00) per each counterfeit trademark used and product sold, as provided by 15 U.S.C. § 1117(c)(2) of the Lanham Act.

j. Entry of an Order requiring Defendants to account to and pay Plaintiff for all profits and damages resulting from Defendants' copyright infringement and that Defendant be required to pay Plaintiff its actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504.

k. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b), and 17 U.S.C. § 505, of Plaintiff's costs and reasonable attorneys' fees and investigative fees, associated with bringing this action, including the cost of corrective advertising.

l. Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, e-commerce platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and

remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

m. Entry of an award of pre-judgment interest on the judgment amount.

n. Entry of an Order for any further relief as the Court may deem just and proper.

Dated: March 11, 2025

Respectfully submitted,

*/s/ Joel B. Rothman*
JOEL B. ROTHMAN
Florida Bar Number: 98220
joel.rothman@sriplaw.com
ANGELA M. NIEVES
Florida Bar Number: 1032760
angela.nieves@sriplaw.com
RACHEL I. KAMINETZKY
Florida Bar Number: 1059614
Rachel.kaminetzky@sriplaw.com

**SRIPLAW, P.A.**
21301 Powerline Road
Suite 100
Boca Raton, FL 33433
561.404.4350 – Telephone
561.404.4353 – Facsimile

*Counsel for Plaintiff Zuru Inc.*